SAMUEL, Judge.
Plaintiff filed these consolidated suits for workmen’s compensation and personal injury damages arising out of two elevator accidents, both of which allegedly occurred in the service elevator of the First National Bank of Commerce Building in New Orleans. At the time of both accidents, plaintiff was employed by the Richards Center, *458 the owner of the First National Bank of Commerce Building.
The first suit was against the Richards Center and its compensation insurer, Reliance Insurance Company, to recover workmen’s compensation benefits. Reliance answered and filed a third party demand against Otis Elevator Company and its liability insurer, alleging Otis was the manufacturer and installer and had an exclusive maintenance agreement on the elevator in question. Third party plaintiff invoked the doctrines of strict liability, res ipsa loquitur and negligence. Subsequently, plaintiff’s compensation claim was settled by Reliance for a total of $7,040.63.
The second suit filed by plaintiff is a liability claim against Otis Elevator Company and the City of New Orleans.[1] Reliance intervened in that second suit, seeking reimbursement for the compensation benefits paid and to be paid as a result of the falls of the elevator.
The consolidated cases were tried and taken under advisement. While under advisement, plaintiff settled the main demand against Otis, but Reliance’s claim against Otis for $7,040.63 was not settled.
The trial court then rendered judgment dismissing Reliance’s third party demand in the first suit and its intervention in the second suit. In reasons for judgment, the trial judge stated that, while the evidence was sufficient to conclude Otis was negligent in causing the first accident, inter-venor and third party plaintiff had not met its burden of proving plaintiff’s injuries resulted from that accident. By implication, the trial judge thus found the second accident was the cause of plaintiff’s injuries and he specifically found plaintiff had failed to prove liability on the part of Otis with respect to that accident. Reliance has appealed.
The record does not establish with exactness the date of the first accident. However, the consensus is it occurred sometime in May or June of 1972. Plaintiff testified he did not pay particular attention to any possible injury which might have resulted from the first accident; he did not see a doctor or lose any time from work, nor did he obtain any treatment whatever in connection with the first accident. He did not report that accident to his employer because he did not have many pains, and the few pains he did experience in his back were attributed by him to a prostate problem.
Plaintiff’s co-workers, Weseley Kniepp and Brian Thompson, both testified they knew nothing regarding any injury from the first elevator accident. While plaintiff complained continually after the second accident, the testimony is clear he made no complaints whatever to his fellow employees regarding the first. It is also significant that all the medical evidence indicating injury to plaintiff’s back was related to treatment rendered after the second accident. Since the physicians only saw plaintiff after the second accident, they were not in a position to make a determination of his back condition prior to that time. Consequently, the medical testimony is of no benefit to appellant in view of the testimony of plaintiff and of his fellow employees, all of which establishes with little doubt that he was not injured in the first accident.
On the day of the second accident the elevator was being operated by an employee of the Richards Center who was not the regular elevator operator; he was the lobby porter. At approximately 4:15 p. m. plaintiff entered the elevator on the nineteenth floor with the intention of stopping and exiting at the first floor. However, he stated that instead of stopping at the first floor, the elevator proceeded all the way down to the basement and he was “jarred”.
The testimony indicates the elevator operated in a normal manner until it ap *459 proached the first floor. The lobby porter, Willie Ball, testified he attempted to slow the elevator between the third and first floors but it went straight down and returned to the first floor even though he took no action with respect to the controls to cause it to come back up. He denied knowledge that anyone was injured and stated when the elevator returned to the first floor everyone aboard was laughing and talking.
The testimony offered by Otis tends to show Ball’s testimony asserts a physical impossibility. Otis called Roland Tillison, an employee of twenty-two years, who testified the leveling of an elevator with a particular floor is largely a matter of judgment on the part of the operator. He explained an experienced operator can release the controls at just the right moment so that the elevator aligns directly with the desired floor level, but an inexperienced operator may have to stop the elevator and reactivate the controls in order to bring it to that floor level. Tillison further testified if the controls were moved abruptly from the “down” position to the “stop” position and then to the “up” position, the result would be a stop which was considerably more abrupt than normal. He characterized such an incident as “operator malfunction”. With regard to Willie Ball’s statement, that he did not reverse the controls but that the elevator went into the basement and bounced back up, Tillison testified that in the pit of the elevator shaft there was a hydraulic bumper designed to absorb the shock of the elevator striking it and that, because the weight of the car is much greater than the upward force of the hydraulic bumper, it would be impossible for the hydraulic bumper to literally shove the elevator from the basement back up to the first floor.
Tillison’s testimony was supported by Donald Naquin, a maintenance examiner for Otis. Naquin testified the buffer device consists of a “downward” stroke which has the effect of cushioning or of absorbing the force of a downward moving elevator. Such a buffer device does not have an upward stroke which could repel the elevator back to the first floor.
The testimony of Lloyd Ponson, an elevator inspector for the City of New Orleans, was also presented. Ponson inspected the elevator on August 7, 1972, approximately two weeks prior to the second incident. At the time of his inspection he found everything on the elevator worked as it should. Moreover, he stated the elevator landed and leveled properly at floor level and completely passed his test. Like the other two witnesses, he had never heard of an elevator bouncing back up to the first floor from the basement.
Particularly impressive is Ball’s failure to mention the alleged malfunction in August, 1972 to his employer or to anyone else, including his replacement. The replacement arrived approximately five minutes after the incident and Ball testified he watched him enter the elevator, close the door, and assumed he had taken the elevator up. Ball did not tell his replacement anything unusual had occurred or that there was anything inoperable with the elevator.
Particularly important with regard to the immediate resumption of operation of the elevator is additional testimony given by Tillison. He testified, without contradiction, that if the elevator 'had struck the hydraulic buffer and depressed it even as little as two or three inches, a limit switch would be tripped and all relays would be cut off. In this way, the elevator would have been rendered inoperable, and the only way the elevator could have been placed back in operation was to reativate the relays in the machine room on the twenty-second floor of the building. Not only was there no record of any such reactivation of the relays, but equally important, the elevator continued to operate following the accident.
Both questions presented for the trial judge’s decision, i. e., which accident in *460 volved liability on the part of Otis and which accident caused plaintiff’s injuries, posed only issues of fact for determination by the trial judge. The principle has been stated repeatedly in the jurisprudence that the trial judge is vested with much discretion in reaching his factual conclusions, and that such conclusions should not be disturbed on appeal in the absence of manifest error.[2] In the present case, the trial judge was presented wtih some conflicting testimony regarding the issues for his determination. After reviewing the evidence presented, our conclusion is that his findings of fact are correct. On the record before us, we also find plaintiff’s injuries were caused by the second accident and that the second accident was not caused by malfunction of the elevator or negligence on the part of Otis.
For the reasons assigned, the judgments appealed from are affirmed.

AFFIRMED.

. The City of New Orleans was voluntarily dismissed without prejudice.

. See, for example, Bartholomew v. Travelers Insurance Go., La.App., 290 So.2d 390.